UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALOOMEH TEHRAN, *et al.*,<br><br>     Plaintiffs,<br><br> v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, *et al.*,<br><br>     Defendants. | Case No. 25-cv-1584 (JMC) |

## MEMORANDUM OPINION

  Saloomeh Tehran sues alongside her parents Afsaneh Molaei and Mohammad Memarzadeh Tehran (collectively, Plaintiffs), seeking to compel the adjudication of her parents' immigration visa applications. Plaintiffs name as Defendants Secretary of State Marco Rubio, Secretary of Homeland Security Kristi Noem, a senior official in the Bureau of Consular Affairs, and the former consul general for the United States in Turkey. Plaintiffs contend that the applications at issue have been stuck in administrative processing for years and thus have been unreasonably delayed in violation of the Administrative Procedure Act (APA) and the Mandamus Act. Defendants have moved to dismiss Plaintiffs' claims on various grounds. While the Court does not find all of Defendants' arguments for dismissal persuasive, it does agree that Plaintiffs have failed to state a plausible claim for unreasonable delay. Accordingly, the Court will **GRANT** Defendants' motion to dismiss.[1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

**I.     BACKGROUND**

The Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1101 *et seq.*, governs the issuance of visas to immigrants pursuing admittance into the United States. A U.S. citizen or lawful permanent resident seeking to help a relative immigrate to the United States must first file with the U.S. Citizenship and Immigration Services (USCIS) a Form I-130, *Petition for Alien Relative*, https://perma.cc/Z5MY-RNAE. *See* 8 C.F.R. §§ 204.1(a)(1), 204.2(f)(3). If USCIS approves the petition, it is then sent to the State Department's National Visa Center (NVC). 8 C.F.R. § 204.2(f)(3). At that point, applicants must submit another application to the NVC and await an interview with a consular officer. 22 C.F.R. §§ 42.61–.62. At the conclusion of the interview, "the consular officer must [either] issue . . . [or] refuse the visa." *Id.* § 42.81(a). If a consular officer determines that there is not sufficient information to establish visa eligibility, the officer may provisionally "refuse" the visa pending further administrative processing under Section 221(g) of the INA, which typically consists of additional information-gathering. U.S. Dep't of State, *Administrative Processing Information,* https://perma.cc/BT4W-Q7HG; *see* 8 U.S.C. § 1201(g).

Plaintiff Saloomeh Tehran filed a Form I-130 Petition with USCIS on behalf of her mother, Afsaneh Molaei, and father, Mohammad Memarzadeh Tehran, in August 2021. ECF 1 ¶¶ 13–14. Their applications were approved for processing in January 2022. *Id*. ¶ 15. On October 17, 2023, the U.S. Embassy and Consulate in Ankara, Turkey interviewed both applicants. *Id.* ¶¶ 22–23. Plaintiffs allege that although a State Department database reflects that Plaintiffs' applications were "refused," no such final decision was communicated to Plaintiffs. *Id.* ¶¶ 32–33. Rather, after their interviews, Molaei and Tehran received a request from the Embassy to complete a Supplemental Questionnaire, form DS-5535. *Id.* ¶ 24. Plaintiffs allege that the Embassy indicated

2

that it would "continue" processing their visa applications when the additional information was provided, and that Plaintiffs would "receive another adjudication once such processing is complete." *Id.* ¶¶ 33, 36; ECF 1-6 at 19–20.

Over a year went by with no change in the status of Plaintiffs' applications. ECF 1 ¶¶ 41, 43. While they waited, Plaintiffs allege that they were not able to visit their newborn grandchild or assist their daughter with post-childbirth challenges, which caused them "severe emotional distress and psychological harm." *Id.* ¶¶ 53–54. On May 16, 2025, still having heard nothing from Defendants, Plaintiffs filed a petition for mandamus compelling Defendants to act on their visa applications. *Id.* at 11.

## II.   LEGAL STANDARD

The Court resolves the pending motion under Rule 12(b)(6).[2] Under that rule, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making that determination, the Court relies on the complaint itself, which may include "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). The Court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

## III.   ANALYSIS

In their Rule 12(b)(6) motion, Defendants move to dismiss Plaintiffs' case on several grounds. To start, Defendants assert that two threshold issues bar review of Plaintiffs' claims. First,

---

[2] Defendants also seek dismissal of Defendant Kristi Noem, Secretary of the Department of Homeland Security, under Rule 12(b)(1) because they contend that Defendant Noem had no role in adjudicating the visa applications and thus is not a proper defendant in this action. ECF 7 at 12. Because the Court dismisses this matter in its entirety for the reasons explained below, it does not decide this issue.

they argue that the doctrine of consular nonreviewability applies. ECF 7 at 17. Second, they contend that there is no action the Court could compel Defendants to perform under the APA because Plaintiffs' visa applications have already been refused and thus there is no remaining non-discretionary agency action pending. *Id.* at 12; *see* 5 U.S.C. §§ 555(b), 706(1). The Court finds that neither of these threshold issues warrant dismissal. The consular nonreviewability doctrine does not apply here because Plaintiffs' claims are based on Defendants' failure to render a decision on their applications; Plaintiffs do not seek judicial review of any consular officer's final determination. Additionally, the Court concludes that Plaintiffs can bring this suit to compel a final decision on their applications that remain in administrative processing because issuing a decision on their pending visa applications is a discrete agency action required by law.

Having resolved those issues in Plaintiffs' favor, the Court turns to Defendants' third basis for dismissal—that Plaintiffs have failed to state a claim for unreasonable delay. A delay of just over 18 months—from the date when Plaintiffs were interviewed to the filing of their complaint—is not unreasonable. Further, the Court cannot practicably grant Plaintiffs' request for relief without reordering the queue for immigration adjudications and placing Plaintiffs' applications ahead of others who are also awaiting action on their visa applications. That type of reshuffling of agency priorities is not the proper role of the Court. Accordingly, the Court finds that Plaintiffs have failed to state a claim for unreasonable delay and grants Defendants' motion to dismiss under Rule 12(b)(6).

### A. Consular Nonreviewability

The Court begins with Defendants' argument for dismissal based on the doctrine of consular nonreviewability. ECF 7 at 17. The doctrine of consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review." *See Baan Rao Thai*

*Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). Because decisions regarding the admission and exclusion of noncitizens "may implicate relations with foreign powers [and] involve classifications defined in the light of changing political and economic circumstances," such assessments "are frequently of a character more appropriate to either the Legislature or the Executive." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)).

That doctrine, however, does not apply where "plaintiffs do not seek judicial review of a consular decision, but instead seek a final decision on their applications." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-cv-01388, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019). And that is what Plaintiffs seek here. Plaintiffs are not asking the Court to pass judgment on any reason a consular officer may have for refusing their applications—they just want the Court to order Defendants to make a decision. That logic applies despite the nominal "refusal" that Plaintiffs allege happened before the current administrative processing stage began. Indeed, "a long line of decisions" from courts in this district have concluded that the doctrine does *not* prohibit judicial review in cases analogous to this one because consular nonreviewability "applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

Pointing to an unpublished D.C. Circuit opinion in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), Defendants argue that a consular officer's initial refusal of a visa application is a final decision that this Court cannot review, even if Plaintiffs allege that their applications remain under consideration in subsequent administrative processing. ECF 7 at

5

19. In *Karimova*, the D.C. Circuit determined that the visa applicant before it could not compel a consular officer to take further action on her application, which had been refused, because her matter had "already . . . concluded." *Karimova*, 2024 WL 3517852, at *4. The Court disagrees with Defendants' position. First, the Court observes that *Karimova* is not binding on it. *See id.* at *6 (noting that "this disposition will not be published"); Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062, at 1 (denying the government's motion to publish). Under the D.C. Circuit's rules, the panel's decision not to publish its opinion means "that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2); *see also Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 973483, *7 (Mar. 31, 2025) ("This Court agrees . . . that *Karimova*, as an unpublished opinion, is not binding.") (collecting cases). So *Karimova* does not compel the Court to find that the doctrine of consular nonreviewability applies here.

Second, the Court is persuaded by the reasoning of the majority of courts in this district—even after *Karimova*—holding that the doctrine of consular nonreviewability does not bar review where plaintiffs sufficiently allege that their applications have not reached final adjudication, such as when they have been placed in administrative processing after a consular interview. *See, e.g., Shushkov v. Rubio*, No. 24-cv-2265, 2025 WL 2389939, at *4 (D.D.C. Aug. 18, 2025) (where plaintiff alleged his visa application was refused and placed in administrative processing after his interview, plaintiff "sufficiently alleged that he has not yet received a final decision"); *Alsaraj v. U.S. Dep't of State*, No. 24-cv-3399, 2025 WL 2732704, at *5 (D.D.C. Sep. 25, 2025) (same); *Tolymbekova v. Rubio*, No. 25-cv-295, 2025 WL 2576312, at *4–5 (D.D.C. Sep. 5, 2025) (same); *Mehrpooya v. Allen*, No. 24-cv-2340, 2025 WL 2549279, at *5 (D.D.C. Sep. 4, 2025) (same); *Aramnahad*, 2025 WL 973483, at *8 ("[T]he court's conclusion in *Karimova* that refusing an application and placing it in administrative processing is a 'final' decision does not square with

6

the facts Plaintiffs have alleged . . . [and] the officer's decision to place Plaintiffs' application in administrative processing is not equivalent to rendering a final decision.").

Because the Court "must focus on what is actually happening," and not allow the Government to "elevate form over substance to avoid review," the Court considers the facts Plaintiffs have alleged to determine whether a final decision has been made on their applications. *Aramnahad*, 2025 WL 973483, at *8 (quoting *Al-Gharawy*, 617 F. Supp. 3d at 16). After all, at the motion to dismiss stage, the Court is bound to assume the truth of Plaintiffs' material factual allegations and accept as true all well-pleaded facts and inferences. *See, e.g., Sparrow*, 216 F.3d at 1113. Plaintiffs' complaint alleges that their applications "remain pending" and that the Embassy informed them it would "continue" processing their applications after their interviews. ECF 1 ¶¶ 36, 41. Additionally, the notice the State Department sent to Plaintiffs as recently as March 2025 states that they "will receive another adjudication once such processing is complete." ECF 1-6 at 19–20. Taken together, these facts support the plausibility of Plaintiffs' allegations that their applications remain under consideration and they are still awaiting a final decision. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 112 (D.D.C. 2024) ("In other words, the application is still being processed and a decision is still forthcoming. It has only been 'refused' in the far-from-literal sense that it has not yet been 'granted' or 'denied.'").

Because Plaintiffs do not ask the Court to review any consular officer's decision, but instead seek a final decision or determination that adjudication has been unreasonably delayed, the doctrine of consular nonreviewability does not apply to bar judicial review of Plaintiffs' claims.

**B. Non-discretionary Duty to Take Agency Action**

Next, Defendants contend that Plaintiffs have failed to identify "a clear, non-discretionary duty requiring a consular officer to take any action" necessary to establish a mandamus claim or a

7

claim of agency inaction under APA Section 706. ECF 7 at 12–13. Under the APA, to assert a claim of unreasonable delay, a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take.'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see also* 5 U.S.C. § 555(b) (requiring agencies to take non-discretionary actions within a "reasonable time"); 5 U.S.C. § 706(1) (granting courts the authority to "compel agency action unlawfully withheld or unreasonably delayed"). To obtain a writ of mandamus, a plaintiff must show that the Government possesses "'a clear duty to act' under the circumstances." *Aramnahad*, 2025 WL 973483, at *5 (quoting *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)); *see also* 28 U.S.C. § 1361 (providing district courts with jurisdiction over mandamus suits to compel action by an officer of the United States). Because "the standards for obtaining relief" under the Mandamus Act and the APA are "essentially the same," the claims are evaluated jointly. *Al-Gharawy*, 617 F. Supp. 3d at 17 (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)).

Plaintiffs argue that the non-discretionary action Defendants are required to take here is to complete the processing of their visa applications. ECF 1 ¶¶ 62–63. Plaintiffs contend that this duty comes from the plain text of the INA, 8 U.S.C. § 1202(b), which provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." *Id.* But because Defendants take the view that a final adjudication already occurred when Plaintiffs' applications were provisionally refused after their October 2023 interviews, they maintain that there is no remaining agency action they are required to take by law. ECF 7 at 12. Again, the Court disagrees with Defendants.

As support for their position that they have already discharged their statutory duties with respect to Plaintiffs' applications, Defendants again point to *Karimova*, which they argue is

8

"dispositive" in cases like this where "[p]laintiffs seek to compel State Department officials to act further on visa applications refused under INA Section 221(g) and undergoing post-refusal administrative processing." ECF 7 at 14. As discussed above, *Karimova* is not binding authority, so the decision would at best be persuasive, not dispositive. *See supra* Section III.A. The Court has already concluded that Plaintiffs' complaint sufficiently alleges that they are still awaiting a final decision on their visa applications, *id.*, and thereby rejects Defendants' argument that they have complied with their nondiscretionary duty to provide a final adjudication. *See Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) (citing *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023)) (Issuing a final decision on a visa application is "plainly a discrete agency action" required by law.); *Shushkov*, 2025 WL 2389939, at *6 (collecting cases).

Additionally, Plaintiffs rely on—and the Court finds persuasive—an argument not considered by the court in *Karimova*. In *Karimova*, the plaintiff "rooted the asserted duty to act on her visa in Section 555(b) of the [APA]," an "ancillary provision stating that 'each agency shall proceed to conclude a matter presented to it' 'with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time.'" *Karimova*, 2024 WL 3517852, at *2–4 (citing 5 U.S.C. § 555(b)). The court in *Karimova* considered whether 5 U.S.C. § 555(b) "and *only* Section 555(b)—places a clear, non-discretionary duty on [a] consular officer" and found that such an ancillary, "non-specific directive" did not. *Id.* at *3. Plaintiffs here do not rely solely on the ancillary provision of APA Section 555(b), but instead look to 8 U.S.C. § 1202(b) as supplying Defendants' duty to act. ECF 1 ¶¶ 62–63. Since *Karimova*, many courts in this district confronting this question have held that 8 U.S.C. § 1202(b) "confers on consular officers a nondiscretionary duty to review and adjudicate immigrant visa applications," even those placed in

9

post-interview administrative processing. *Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *11 (D.D.C. Aug. 21, 2025) (collecting cases). Because section 1202(b) requires that "[*a*]*ll* immigrant visa applications *shall* be reviewed," that section of the INA "establishe[s] a specific principle of comprehensive review and adjudication by consular officers." *Id*. Defendants' failure to move *all* visa applications towards a final decision—including Plaintiffs'—violates a nondiscretionary duty imposed by section 1202(b). *See id*. And even "[a]bsent binding precedent supporting [P]laintiff[s'] position that the INA imposes a non-discretionary duty on the government to adjudicate the visas, the assumption of reviewability [would] permit[] consideration of the merits of [their] visa mandamus claim." *Hamdan v. Oudkirk*, No. 24-cv-1001, 2024 WL 4553983, at *7 (D.D.C. Oct. 23, 2024); *Sereshti v. Gaudiosi*, No. 24-cv-1288, 2024 WL 4625802, at *6 (D.D.C. Oct. 30, 2024) (collecting cases on the permissibility of "assuming reviewability" and considering the merits of Plaintiffs' visa mandamus claims). Because Plaintiffs allege they have not received a final decision on their applications, there remains a discrete action Defendants are required to take under 8 U.S.C. § 1202(b).

### C. Unreasonable Delay

Finally, Defendants argue that Plaintiffs have failed to state a plausible claim of unreasonable delay. ECF 7 at 20. Plaintiffs contend that the "fact dependent nature" of their unreasonable delay claim precludes the Court's ability to dismiss at this stage. ECF 8 at 17. However, courts in this jurisdiction routinely assess unreasonable delay claims at the motion to dismiss stage, and the Court finds it appropriate to do so here. *See, e.g.*, *Da Costa*, 80 F.4th at 346 (affirming district court dismissal of plaintiffs' claims for failure to state a claim of unreasonable delay); *Janay*, 743 F. Supp. 3d at 118 (granting motion to dismiss after assessing *TRAC* factors and determining plaintiff failed to state a claim for unreasonable delay); *Motevali*, 2025 WL

885116, at *8 (same); *Hajizadeh*, 2024 WL 3638336, at *6 (same); *Sereshti*, 2024 WL 4625802, at *11 (same). Ultimately, the Court agrees with Defendants that Plaintiffs have not sufficiently alleged that Defendants' delay warrants judicial intervention.

The central question in evaluating a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984)). To assess unreasonable delay, courts assess six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (quoting *TRAC*, 750 F.2d at 80).

The *TRAC* factors are not "ironclad" and each case "must be analyzed according to its own unique circumstances" because each "will present its own slightly different set of factors to consider." *Hajizadeh*, 2024 WL 3638336, at *4 (citing *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F. 2d 81, 86 (D.C. Cir. 1984)). The first and fourth factors are "most important" in the visa application context. *Da Costa,* 80 F.4th at 340. The Court considers the factors below.

*1. Factors 1 & 2*

The first two factors are typically analyzed together and assess "whether there is any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay." *Hajizadeh*, 2024 WL 3638336, at *4. Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but

11

will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Nevertheless, in the visa application context, courts "often look to the length of delay as a rough yardstick to determine whether the 'first-in, first-out' rule is, in fact, being applied." *Sivananthan v. Blinken*, No. 23-cv-1181, 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023). In this district, the length of delay is usually evaluated from the most recent government action to the date upon which a plaintiff seeks relief in court. *See e.g.*, *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, *7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay, however, is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint . . . The last action taken on plaintiff's visa application was his consular interview.").

In this case, there was about an 18-month delay from the date of Plaintiffs' interviews to when they filed the complaint. ECF 1 ¶ 41. On its face, that timeline tilts in favor of Defendants. Courts in this jurisdiction have routinely found that similar delays are not unreasonable. *See e.g.*, *Shabestary v. Sanders*, No. 24-cv-362, 2024 WL 5118229, at *6 (D.D.C. Dec. 16, 2024) (finding a 22-month "delay in processing" was not unreasonable); *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (20 months); *Sharifymoghaddam v. Blinken*, No. 23-cv-1472, 2024 WL 939991, at *5 (D.D.C. Mar. 5, 2024) (15 months). Even if the delay were evaluated from another benchmark Plaintiffs reference—the date from when Plaintiffs submitted their visa applications to the date that they filed this action (about 40 months)—the Court's conclusion would not change. While the Court acknowledges that there are "[n]o bright lines . . . district courts have generally found that immigration delays . . . between three to five years are often not unreasonable." *Sarlak v. Pompeo*, No. 20-cv-0035, 2020 WL 3082018, at *6

12

(D.D.C. June 10, 2020). The delay here falls well within the realm of general reasonableness no matter how the Court calculates it. *See, e.g.*, *Da Costa*, 80 F.4th at 342 (concluding that a 4 year delay is not unreasonable); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592, 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of 42 months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-cv-0402, 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of 44 months not unreasonable); *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"). As such, these factors weigh in favor of Defendants.

### 2. Factor 4

*TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Because granting relief in the context of visa applications would necessarily require "reorder[ing] a queue of applicants seeking adjudication," this factor is often weighed strongly in favor of the defense. *Tate v. Pompeo,* 513 F. Supp. 3d 132, 149–50 (D.D.C. 2017); *Akrayi*, 2023 WL 2424600, at *4 ("[P]recedent in this circuit recognizes that expediting review here would merely redirect resources from other cases."); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay" where "a judicial order putting the petitioner at the head of the queue would simply move all others back."); *Sivananthan*, 2023 WL 4885858 at *4 (collecting cases).

Nonetheless, Plaintiffs assert that they are not asking the Court to prioritize processing their visa applications ahead of others but are instead requesting that the Court order the agency to "follow its own guidance." ECF 8 at 22. To support its position, Plaintiffs claim that Defendants

13

have "attempted to circumvent the law and its own policies by issuing provisional refusals, while admitting that processing [of] the visa applications is continuing." ECF 1 ¶ 59. However, the pleadings do not outline *how* the agency is failing to follow its own guidance. Without specific factual support, this allegation is merely conclusory. *See Da Costa*, 80 F. 4th, at 341 (Plaintiffs' allegation that USCIS does not follow its stated approach was "conclusory" where Plaintiffs did not "provide any substance" to support its allegation that agency was not following its policy); *see also Twombly,* 550 U.S. at 555 (On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").

Ultimately, granting the requested relief would, in fact, require the Court to order the Defendants to act on Plaintiffs' applications. ECF 1 at 11. This would necessarily compel the agency to prioritize resolution of their applications ahead of others. ECF 9 at 21–22. And "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa adjudication context. *Hajizadeh*, 2024 WL 3638336, at *5 (quoting *Arab v. Blinken*, 600 F. Supp. 3d at 71 (D.D.C. 2022)); *see also Manzoor v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-2126, 2022 WL 1316427, at *6 (D.D.C. May 3, 2022) ("It makes little sense to incentivize the creation of a queue of visa applicants within the docket of the federal judiciary to determine the order of the queue for visa applications."). Because Plaintiffs' request for relief would require the Court to take charge of the consulate's priority-setting, ordering the agency to redistribute its resources and prioritize Plaintiffs' applications, the fourth *TRAC* factor weighs in favor of Defendants.

### 3. Factors 3 & 5

The third and fifth factors concern the impacts of the delay on the Plaintiffs. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial

intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) (quoting *TRAC*, 750 F.2d at 80).

Here, Plaintiffs allege that the delays in processing their applications "prevented them from seeing their newborn grandchild, and from helping their daughter . . . with post-childbirth challenges" leading to "severe emotional distress and psychological harm." ECF 1 ¶¶ 53–54. While the Court accepts Plaintiffs' allegations that the delay has been emotionally taxing and does not seek to minimize that, their complaint does not include allegations of any harms that threaten their health and wellbeing so significantly that they overcome the weight of the other *TRAC* factors favoring Defendants. *See Hajizadeh*, 2024 WL 3638336, at *6 (finding "severe emotional distress" due to the uncertainty and "a considerable amount of money" spent on visa-related expenses were not harms sufficiently threatening to plaintiff's physical health and wellbeing); *see also Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"). Accordingly, these factors also tilt in favor of Defendants.

### 4. Factor 6

Finally, the sixth factor addresses "whether the agency's bad faith caused the delay." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Plaintiffs, by their own admission, "do not have any direct evidence of bad faith on the part of any State Department personnel." ECF 8 at 23. However, the lack of plausible allegations of impropriety does not weigh against the Plaintiffs and therefore does not alter the Court's analysis. *See Sivananthan*, 2023 WL 4885858, at *5. This factor is thus neutral.

After weighing the *TRAC* factors, the first and fourth being the strongest in the visa application context, the Court concludes that Plaintiffs have not plausibly alleged that the delay in the administrative processing of their visas is unreasonable. The delays in visa adjudications are undoubtedly frustrating for Plaintiffs, but the *TRAC* factors do not warrant judicial intervention.

* * *

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim, ECF 7, is **GRANTED**, and as a result Plaintiffs' complaint is **DISMISSED**.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: December 11, 2025